UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No.: 16-cr-20593
        Honorable Gershwin A. Drain

EDITHA MANZANO,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#180]**

### I. INTRODUCTION

On December 4, 2017, after a jury trial, Defendant Editha Manzano was found guilty of conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to pay and receive healthcare kickbacks, in violation of 18 U.S.C. § 371, and health care fraud in violation of 18 U.S.C. § 1347. On the same date, the Court revoked Defendant's bond and she was taken into custody. On November 13, 2018, Defendant was sentenced to 84 months imprisonment. She is serving her custodial sentence at FCI Danbury in Connecticut. Defendant's current release date is November 20, 2023.

Presently before the Court is the Defendant's April 25, 2020 Motion for Compassionate Release, filed pursuant to the First Step Act of 2018 and 18 U.S.C.

§ 3582(c). Defendant seeks compassionate release based upon the current global health crisis caused by COVID-19, her age and serious underlying health conditions including diabetes and high blood pressure, and FCI Danbury's inability to adequately implement measures to protect her from exposure to the novel coronavirus. A remote hearing on this matter was scheduled for May 4, 2020. However, because the prison failed to produce the Defendant and the Court advised counsel it had questions concerning the layout of the facility and the medical care it had been providing to Defendant, the Court adjourned the hearing and it occurred on May 7, 2020. Prior to May 7, 2020, counsel for Defendant submitted answers to the Court's inquiries raised on May 4, 2020. Following the Court's May 7, 2020 hearing, the Government filed a Status Update and the Defendant filed a Supplement to her Emergency Motion. Finally, Defendant filed a Response to the Government's Status Update. For the reasons that follow, the Court will grant Defendant's Motion for Compassionate Release.

## II.    FACTUAL BACKGROUND

Defendant is a 72-year-old, non-violent, first time offender. Defendant immigrated to the United States in 1971. She has two nursing degrees and has been employed throughout her adult life. Defendant suffers from diabetes, hypertension, low heart rate, arthritis, vertigo, shortness of breath and depression. In addition to her underlying medical conditions, Defendant bases her present

motion on COVID-19, a respiratory illness that spreads easily with symptoms ranging from mild for people at low risk to severe with respiratory failure and death in older patients and patients with underlying diseases, including diabetes and hypertension.

Defendant is serving her sentence at FCI Danbury in Connecticut. FCI Danbury has been unable to eradicate the spread of COVID-19 at the facility. In April, the BOP website reported numerous positive cases at FCI Danbury. Due to the incidence of the virus at the facility, on April 3, 2020, Attorney General William Barr issued the second of two memoranda directing the BOP to prioritize use of home confinement due to the COVID-19 pandemic for some at-risk inmates at facilities where the virus was materially affecting operations. ECF No. 184, PageID.3253. Attorney General Barr's April 3 memorandum expressly identified FCI Danbury as one of the three facilities that should immediately assess vulnerable inmates for home confinement. *Id*.

Between September 8, 2016 and December 4, 2017, Defendant was under the supervision of the United States Pretrial Services Office. During that time, Defendant complied with all conditions of her bond.

Defendant led a scheme that defrauded Medicare of more than $1.5 million dollars. Specifically, Defendant was convicted for knowingly filing false records

3

at her home health care business in order to bill Medicare for services that were not performed or medically necessary. At sentencing, the Court found that Defendant obstructed justice based on her involvement in soliciting a co-defendant to kill a cooperating witness. Defendant's guideline range at sentencing was 168 months to 210 months imprisonment. The Court granted a downward variance and imposed an 84-month custodial sentence.

## III.   LAW & ANALYSIS

### A.  Standard of Review

A criminal defendant may move for compassionate release under 18 U.S.C. § 3582. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c).

The United States Court of Appeals for the Sixth Circuit recently delineated the three-step test the district courts must employ when evaluating whether compassionate release is warranted under § 3582(c). *See United States v. Jones*, No. 20-36620, 2020 WL 6817488, at *6-9 (6th Cir. Nov. 20, 2020). Specifically, the district court must find (1) whether "extraordinary and compelling" circumstances warrant a reduction in sentence, (2) whether such a reduction is consistent with the Sentencing Commission's applicable policy statements, and (3) whether the reduction in sentence is appropriate after considering the factors set forth in 18 U.S.C. § 3553(a). *Id.*

The *Jones* court further held the Sentencing Guidelines Policy Statement § 1B1.13 did not "wholly survive the First Step Act's promulgation[,]" therefore, the statement is inapplicable to defendant-initiated motions for compassionate release. *Id.* Thus, district courts "may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at *9.

**B. Exhaustion**

A district court may not act on a motion for compassionate release unless the Defendant "has fully exhausted all administrative rights to appeal" the BOP's failure to file a motion for compassionate release on behalf of the Defendant or has waited "30 days from the receipt of such request by the warden of the defendant's

5

facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). In *Alam*, the court concluded the exhaustion requirement is a mandatory claim-processing rule; thus, exhaustion does not implicate the Court's subject matter jurisdiction. *Alam*, 960 F.3d at 832. Moreover, while the exhaustion requirement is not subject to judge-made exceptions and it "must be enforced" when "properly invoked[,]" there are "exceptions to mandatory claim-processing rules[,]" including "waiver" and "forfeiture." *Id.* (citing *Hamer v. Neighborhood Hous. Servs. Of Chi.*, 138 S.Ct. 13, 17 (2017)); *see also United States v. Barnes*, No. 3:13-cr-117, 2020 U.S. Dist. LEXIS 118828, *8 (E.D. Tenn. Jul. 7, 2020)("Mandatory claim-processing rules are only mandatory 'in the sense that a court must enforce the rule if a party 'properly raises' it.")(quoting *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019)).

Here, Defendant argues she has satisfied § 3582(c)'s exhaustion requirement. The Government failed to raise exhaustion in either of its briefing or during oral argument. It has therefore waived exhaustion and the Court will proceed to the merits of Defendant's request for compassionate release. *Alam,* 960 F.3d at 834 (finding no waiver because the government had "timely objected to Alam's failure to exhaust at every available opportunity."); *see also United States v. Howard*, No. 12-20751, 2020 U.S. Dist. LEXIS 149947, at *2-3 (E.D. Mich. Aug. 19, 2020) (proceeding to the merits of the defendant's compassionate release

6

motion because the government "decided to waive its exhaustion argument in its supplemental briefing and at oral argument."); *see also United States v. Roper*, No. 3:12-CR-113-TAV-CCS-1, 2020 U.S. Dist. LEXIS 187054, at *4 (E.D. Tenn. Oct. 8, 2020)(concluding "one of the exceptions to enforcing mandatory claim-processing rules applies" because "the government has waived any objection to defendant's motion on exhaustion grounds.").

### C. "Extraordinary and Compelling"

Defendant argues that her medical conditions and place of confinement place her at increased risk of death or serious illness from COVID-19 and amount to "extraordinary and compelling" reasons supporting her request for compassionate release. The Government originally contested Defendant's ability to demonstrate extraordinary and compelling reasons justified a reduction in sentence. *See* ECF No. 3237. However, the Government filed a Status Update subsequent to the hearing in this matter and now indicates the Defendant's health condition and the COVID-19 pandemic warrant a finding that extraordinary and compelling reasons support a reduction in sentence. *See* ECF No. 189, PageID.3298.

Here, the CDC, the Government and numerous courts acknowledge that Defendant's age and underlying health conditions, in particular diabetes and high blood pressure, subject her to a high risk of serious health complications and

7

potentially death if she contracts COVID-19. *See* Centers for Disease Control, Morbidity and Mortality Weekly Report (April 8, 2020), *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 – COVID-NET, 14 States, March 1–30, 2020* https://www.cdc.gov. (CDC study finding "[a]pproximately 90% of hospitalized patients identified . . . . had one or more underlying conditions, the most common being . . . hypertension [and] diabetes[,]" among a handful of other health ailments.) While many Americans may suffer from these medical conditions, Defendant is also over the age of 65, incarcerated at a facility with a current COVID-19 outbreak, and possesses two of the health conditions with the highest prevalence of hospitalization for severe complications from contracting COVID-19. FCI Danbury has not implemented adequate precautions and does not possess adequate medical care if Defendant contracts the virus. In fact, access to medical care appears sporadic and unreliable. Defendant indicates that recently her blood sugar registered at 470 and she was taken to the hospital where it was discovered the equipment at the facility had given a false number because Defendant's blood sugar was really registering at 140. Defendant further asserts that her diabetes and hypertension are not properly monitored by the medical staff at FCI Danbury. Compassionate release is justified under these circumstances. *United States v. Atwi*, 455 F. Supp. 3d 426, 431-32 (E.D. Mich. 2020); *United States v. Sawicz*, 453

F. Supp. 3d 601, 605-06 (E.D.N.Y. 2020); *United States v. Rodriguez,* 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020).

Indeed, numerous courts have recognized that a diabetes diagnosis increases the risk of serious complications or death from COVID-19 and have granted compassionate release to inmates suffering from the disease. *See Howard v. United States*, No. 16-cr-20222, 2020 U.S. Dist. LEXIS 90130, *8-9 (E.D. Mich. May 22, 2020) (granting compassionate release to inmate suffering from diabetes, hypertension and asthma); *United States v. Colvin*, No. 3:19-cr-179, 2020 U.S. Dist. LEXIS 57962, *8-9 (D. Conn. Apr. 2, 2020) (finding extraordinary and compelling reasons where the defendant suffered from "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19."); *Rodriguez*, 451 F. Supp.3d at 394 (granting compassionate release to inmate of an advanced age suffering from diabetes and two other conditions noting "early research shows that diabetes patients [] have mortality rates that are more than twice as high as overall mortality rates.")

The risk presented by Defendant's medical conditions is increased by the fact that her place of confinement has been unable to stop the spread of COVID-19 in the facility. It is beyond dispute that "jail and prisons are powder kegs for infection" and "[r]ealistically the best—perhaps the only way—to mitigate the damage and reduce the death toll is to decrease the jail and prison population by

releasing as many people as possible." *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 U.S. Dist. LEXIS 64639, at *4 (S.D.N.Y. Apr. 12, 2020); *see also United States v. Vo Duong Tran.*, No. CR 08-00197-DOC, 2020 U.S. Dist. LEXIS 65414, at *5-6 (C.D. Cal. Apr. 10, 2020) (noting that even with the BOP's precautionary measures, "individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."); *see also United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 U.S. Dist. LEXIS 63451, at *7 (S.D.N.Y. Apr. 10, 2020) ("The crowded nature of federal detention centers . . . present an outsize risk that the COVID-19 contagion, once it gains entry, will spread.").

"Several courts have found an 'extraordinary and compelling reason' supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19." *United States v. Goins*, No. 11-cr-20376, 2020 U.S. Dist. LEXIS 100358, *15 (E.D. Mich. Jun. 9, 2020) (quoting *United States v. Bass*, No. 10-cr-166, 2020 WL 2831851, *7 (N.D.N.Y. May 27, 2020)). In *Goins*, the Court found extraordinary and compelling reasons existed for an FCI Elkton inmate who used a corticosteroid and had hypertension because "[t]he continued presence of the virus at the facility suggests it presents an ongoing risk, especially to vulnerable prisoners like Goins." *Id.*; *see also United States v. Jackson*, No. 2:18-cr-86-PPS, 2020 U.S. Dist. LEXIS 108255 (N.D. Ind. Jun. 19, 2020) (finding extraordinary

and compelling reasons based on hypertension, morbid obesity, and bronchitis and the "continued and widespread presence of COVID-19 in FCI Elkton . . . with its open, dormitory-style" housing.)

Finally, while a review of the BOP's website reveals that FCI Danbury has only five positive cases presently, it has never been able to completely eradicate the virus from its facility. The BOP website indicates that FCI Danbury has tested 900 inmates since the virus entered the facility. However, there are 899 inmates currently housed at FCI Danbury. Therefore, at first glance, it appears the positive COVID-19 cases have gone down at FCI Danbury, however it is likewise apparent that continuous testing has slowed down and may have stalled altogether. *See* https://www.bop.gov/coronavirus/.

Moreover, the country is in the midst of a second surge of the virus and Danbury, Connecticut is experiencing an increase in positive COVID-19 cases. With the virus still plaguing the surrounding communities, it is highly likely that it will continue to enter the facility. *See United States v. Massingille*, No. 16-cr-20193, 2020 U.S. Dist. LEXIS 141365, *18 (E.D. Mich. Aug. 7, 2020) ("Given that the staff of FCI Morgantown must necessarily circulate in a community that has been hit hard by the virus, there is an appreciable risk that additional staff will become infected and will transmit the virus to the prisoners."). It appears inevitable that the virus will continue to enter the facility when BOP staff are not

11

frequently tested. As recently as December 2, 2020, the Director of the Bureau of Prisons, Michael D. Carvajal, testified before the House Judiciary Subcommittee that he is unable to require staff to take a test prior to reporting for work. *See* https://www.c-span.org/video/?506909-1/federal-bureau-prisons-us-marshals-service-oversight-hearing.

In sum, based upon consideration of precedent for granting compassionate release, the Court finds that Defendant has presented extraordinary and compelling circumstances under the first prong of 18 U.S.C. 3582(c).

### D. Section 3553(a) Factors

Even where a court finds that extraordinary and compelling reasons exist warranting a sentence reduction, the court may not grant compassionate release unless it considers the reduction in sentence in light of the sentencing factors contained in 18 U.S.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect deterrence goals, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

The Government argues the § 3553(a) factors disqualify Defendant from early release because she has only served approximately 42% of her 84-month sentence. Thus, the Government argues a reduction in sentence at this time will

not adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense or afford deterrence of criminal conduct.

While the Defendant's offense is unquestionably serious, it was also a non-violent, first time offense. Defendant has strong family ties in the community and unlikely odds of recidivism. She has served 36 months of her 84-month sentence. She consistently complied with all of the conditions of pre-trial release and she has no disciplinary record at the BOP.

When extraordinary and compelling circumstances exist and the § 3553(a) factors otherwise support compassionate release, courts have concluded a reduction in sentence will not contravene § 3582(c), even though a defendant has not served at least 50% of the imposed sentence. *See United States v. Cannon*, No. 15-20783, 2020 U.S. Dist. LEXIS 183984 (E.D. Mich. Oct. 5, 2020) (Cox, J.) (granting compassionate release to 71-year old defendant suffering from diabetes, stage-3 kidney disease, obesity, hypertension, high cholesterol and gout, and reducing 188-month heroin distribution sentence to time served after defendant served 62 months or roughly 33% of imposed sentence); *United States v. Gardner*, No. 14-cr-20735-001, 2020 U.S. Dist. LEXIS 129160, at *23-24 (E.D. Mich. Jul. 22. 2020) (Berg, J.) (granting compassionate release where defendant suffered from heart and other medical conditions and served only 12 months of his 52-month sentence); *see also United States v. Saad*, No. 16-20197, 2020 U.S. Dist.

13

LEXIS 74949, *6 (E.D. Mich. Apr. 29, 2020) (Hood, C.J.) (granting compassionate release to 71-year old inmate who served 33 months of a 72-month sentence for a non-violent drug offense, and suffered from medical conditions including kidney disease, hypertension, pulmonary hypertension, sleep apnea and a recent diagnosis of kidney cancer); *United States v. Bandrow*, No. 17-cr-20077, 2020 U.S. Dist. LEXIS 127031 (E.D. Mich. Jul. 20, 2020) (Leitman, J.) (granting compassionate release to defendant who served 19 months of a 60-month sentence where the defendant suffered from epilepsy, asthma, hematuria and had been denied medical treatment necessary to address hematuria condition); *United States v. Jackson*, No. 2:18-cr-86-PPS, 2020 U.S. Dist. LEXIS 108255, at *16 (N.D. Ind. Jun. 19, 2020) (granting compassionate release to a defendant who had only served 24 of his 87 month sentence because "there is a disconcerting probability that [the inmate] will contract the virus if he remains at FCI Elkton."); *United States v. Park*, No. 16-cr-473, 2020 U.S. Dist. LEXIS 73048 (S.D.N.Y. Apr. 24, 2020) (granting compassionate release to an inmate with 20 months remaining of 36 month sentence).

In *Gardner*, the district judge rejected the Government's argument that release after only serving 1-year of a 52-month sentence precluded compassionate release. *Gardner*, 2020 U.S. Dist. LEXIS 129160, *23-24. The *Gardner* court reasoned that while "[i]t may be that serving out [the defendant's] entire sentence

14

would have a greater deterrent effect, [] a longer sentence would also have a greater potential for exposing a particularly vulnerable prisoner to the coronavirus, and the Court must weigh the value of deterrence against increasing the threat of a possibly lethal infection." *Id.* The *Gardner* court concluded that in balancing the circumstances before it, "deterrence weighs less." *Id.* Here, the risk of exposure to Defendant, who is likewise a particularly vulnerable prisoner to COVID-19, outweighs the value of deterrence.

Finally, Defendant has provided a plan upon release to live with her daughter in Royal Oak, Michigan, and assist with the care of her grandchildren. In light of all of these factors, the Court finds the § 3553(a) factors weigh in favor of granting compassionate release.

### IV. CONCLUSION

Accordingly, Defendant's Motion for Compassionate Release [#180] is GRANTED. Defendant's custodial sentence is reduced to time served. Defendant shall be immediately released without holding her in a 14-day quarantine. Defendant shall remain in a 14-day quarantine upon release.

Defendant shall, upon release, commence her originally imposed 24-month term of supervised release. *See* ECF No. 158, PageID.2729. Upon 24 hours of release, Defendant shall call the Probation Department to schedule an appointment.

SO ORDERED.

Dated: December 8, 2020 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 8, 2020, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Case Manager